UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JOSEPH REBORCHICK,**

    **Plaintiff,**

v.                                                  Case No.  8:06-CV-1355-T-EAJ

**MICHAEL J. ASTRUE,**[1]
**Commissioner of Social Security,**

    **Defendant.**
_____ /

## **FINAL ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United Sates Code, Section 405(g) and 1383( c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") payments under the Act.[2]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636 ( c) and Fed.R.Civ.P. 73 (Dkt. 10).

applicable legal standards. 42 U.S.C. § 405(g) (2003). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).[3]

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

Plaintiff alleges that he became disabled on August 6, 2002 due to bipolar disorder, back pain, chronic pain of the right side, and pain of the neck shoulders and knees. (T 14, 75) Plaintiff filed an application for DIB and SSI on January 14, 2004. (T 55, 278-280) His application was denied initially on June 4, 2004, and after reconsideration on September 20, 2004. (T 31, 32) The ALJ held an administrative hearing on October 6, 2005. (T 14, 434) The ALJ denied benefits to Plaintiff in a decision dated February 23, 2006. (T 14-20) The Appeals Council denied Plaintiff's request for review on June 23, 2006, allowing the ALJ's decision to stand. (T 5-7) Plaintiff filed a timely petition for judicial review of the Commissioner's denial after exhausting all administrative

---

[3] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981).

remedies (Dkt. 1).  The Commissioner's decision is ripe for review under the Act.

At the time of the ALJ's decision, Plaintiff was fifty-seven years old and had a high school equivalency education. (T 14, 55, 81) His past work experience includes work as a lithographer and short order cook.  (T 59-63, 66, 95)

To determine whether or not Plaintiff was disabled, the ALJ performed a five-step evaluation. See 20 C.F.R. §§ 404.1520 and 416.920.  First, the ALJ found that although Plaintiff alleged to have become disabled in August 2002, Plaintiff returned to work in 2003 and 2004.[4]  (T 15, 63, 65, 295, 381) Plaintiff's work records show that he earned $8056.14 in 2003 and $1484.50 in 2004. (T 63, 381) For the purposes of the opinion, the ALJ considered Plaintiff's work activities for these years to be unsuccessful work attempts.  (T 15) Second, after examining the medical evidence, the ALJ determined that Plaintiff had severe impairments of bipolar disorder, hypertension, moderate degenerative changes of the lumbar spine, chronic neck and shoulder pain, and left arm and left knee pain.  (Id.) Third, the ALJ found that the combination of Plaintiff's impairments did not medically meet or equal an impairment listed in the Listing of Impairments. (T 19)

Moving to the fourth step, the ALJ evaluated Plaintiff's residual functional capacity ("RFC").  The ALJ observed that Plaintiff testified that he could tend to all his personal needs, perform light household work, do volunteer work, and go to bingo several times a month.  (T 17) Plaintiff also noted that he could concentrate and follow instructions to the extent of reading instructions for and building models and working puzzles.  (T 17-18)   The ALJ found that

---

[4] Though the ALJ does not mention it in the decision, Plaintiff's testimony at the October 2005 administrative hearing indicates that Plaintiff was also employed for a few months in 2005 as a dental assistant.  (T 443)

Plaintiff's subjective complaints, including pain, did not prevent Plaintiff from working, especially in light of documented work activity subsequent to the claimed date of disability onset. (T 18) The ALJ determined that Plaintiff had the RFC to perform a wide range of light work[5] with limitations of (1) being able to alternate sitting and standing positions at will, (2) no crouching, crawling, kneeling, or climbing ladders, scaffolds, ropes, (3) occasionally stooping, balance, and climb stairs and ramps, and (4) limited handling of stressful situations, specifically with interactions with co-workers and public only allowed occasionally. (T 19, 20)

The ALJ questioned a vocational expert ("VE") concerning Plaintiff's ability to work based upon the determined RFC. (T 19, 450-1) The VE testified that Plaintiff's past job as a lithographer was compatible with those limitations. (T 450-451) Based upon Plaintiff's RFC and the opinion of the VE, the ALJ determined that Plaintiff was able to return to his former work as a lithographer. (T 19) As Plaintiff was found able to perform his past work, the ALJ determined that Plaintiff was not disabled. (Id.)

The medical evidence has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II.

Plaintiff argues that the Commissioner erred by failing to 1) fully and adequately consider

---

[5] Light work, defined by 20 C.F.R §§ 404.1567(b), 416.967(b), involves the lifting of not more than twenty pounds occasionally with frequent lifting and carrying of objects weighing up to ten pounds. The regulations also state that: "Even though the weight lifted may be very little, a job in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to site for long periods of time."

all of Plaintiff's impairments; and 2) failing to fully and adequately consider the requirements of Plaintiff's past work activities (Dkt. 20 at 6).

**1.** Plaintiff contends that the hypothetical question the ALJ posed to the VE did not give a complete and accurate description of Plaintiff's limitations. (Id. at 7) Plaintiff asserts that the ALJ erred by not including a limitation for reaching due to shoulder pain in the hypothetical to the VE (Id. at 8). Plaintiff claims that this limitation is warranted based on the opinion of a reviewing state agency physician who noted that frequent overhead reaching should be limited due to shoulder discomfort. (Id.) Plaintiff claims this finding was specifically endorsed by the ALJ. (Id. at 9) Plaintiff argues that Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) calls for a remand in the current situation as, without the inclusion of the limitation on reaching, the VE's opinion that the Plaintiff could return to his past work as a lithographer cannot be the basis of substantial evidence for the ALJ's decision that Plaintiff was not disabled (Dkt. 20 at 7).

Plaintiff is correct that Wilson states that for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. Wilson, 284 F.3d at 1227. However, in the discussion following this statement, the court found that although the plaintiff asserted pain and extreme limitations, those limitations were not supported by objective medical evidence and thus were properly not included in assessing determining plaintiff's RFC for disability status. Id. at 1227-1228.

In her decision, the ALJ listed chronic shoulder pain as one of Plaintiff's severe impairments. (T 15) The ALJ did not, however, include any limitation on reaching. (T 19-20) In determining the Plaintiff's RFC, the ALJ considered the medical examinations of both consulting and examining physicians.

The ALJ discussed the report of examining physician David Miller, D.O. ("Dr. Miller"), noting that Dr. Miller found that Plaintiff had mild scoliosis, mild spasms and tenderness in the lumbar region, slight enlargement of the hands symptomatic of arthritis, but with normal muscle grip and strength in both right and left hands. (T 16, 175) Regarding functional limitations, the ALJ also mentioned that Dr. Miller's report showed intact neurology and normal functional mobility. (T 175) Dr. Miller's report listed specific indications of fine and gross functional mobility: Plaintiff was able to: (1) get on and off the examination table; (2) move in and out of the supine position; (3) place and remove letters from an envelope; and (4) and tie his shoes. (T 175)  Dr. Miller's report also showed full range of motion in Plaintiff's right and left shoulder . (T 178) The ALJ noted that Dr. Miller was of the opinion that Plaintiff suffered from chronic back pain. (T 16, 175) There was no mention in Dr. Miller's report of any functional limitations relating to Plaintiff's shoulder. (T 174-179)

The ALJ also referenced Plaintiff's treatment with the Tampa Veteran's Affairs Medical Center ("VAMC") in evaluating Plaintiff's RFC. (T 16) The ALJ noted x-ray exams that revealed degenerative disc disease, but with no mention of any bone abnormalities in the shoulder area. (T16, 328-9) The ALJ also discussed Plaintiff's acupuncture and TENS treatment history for myofascial pain syndrome of the shoulder, neck and lumbar region, noting that Plaintiff reported a complete elimination of right neck and shoulder pain in September 2004. (T 16, 185, 292) The ALJ mentioned that re-injury of the neck and shoulder in 2005 brought Plaintiff back to the VAMC, but that the examining physician could not locate any specific trigger points for the pain. (T 16, 362) The ALJ noted that Plaintiff subsequently resumed acupuncture treatments and reported good pain relief. (T 362, 445)

6

The record shows that from August 2003 through August 2005, Plaintiff was seen by various medical staff at the VAMC including physicians Maria Wiscovitch, M.D., a neurology fellow, and Joel Scholten, M.D., a staff physician. (T 185, 292, 313-6, 362-3)  However, while the documentation of Plaintiff's diagnosis and treatment for shoulder pain at the VAMC was extensive, Plaintiff fails to cite to any of the VAMC medical records reflecting any functional limitations, reaching or otherwise, due to Plaintiff's shoulder pain. (Dkt. 20)

The ALJ also discussed two state agency, non-examining physicians' reports in determining Plaintiff's RFC. (T 18) Both of these physicians conducted physical residual functional capacity assessments based upon Plaintiff's medical records. (T 234-41, 270-7) The first of these assessments, conducted in June 2004, listed a limitation in reaching, specifically overhead reaching due to shoulder pain.  (T 237) The limitation was that reaching was limited to occurring "frequently," which the report indicated as "occurring one-third to two-thirds of an 8-hour workday." (T 234, 237)  The physician also noted that Plaintiff's allegations were not fully supported by objective medical evidence, but that Plaintiff was partially credible.  (T 239)  The second assessment, conducted in September 2004, listed no limitations in reaching.  (T 273) The ALJ mentioned that she considered these physicians' reports in determining Plaintiff's limitations. (T 18)

In reaching her decision on Plaintiff's RFC, the ALJ gave consideration to both examining and consulting physicians reports.. (T 18)   Contrary to Plaintiff's contention that the ALJ specifically endorsed the assessments of the non-examining physicians, the record reflects that non-examining physicians' opinions were given "some weight" while examining physicians' opinions were given "great weight." (T 18) No examining physician noted any limitations due to Plaintiff's

shoulder pain. The only physician who noted any limitations related to Plaintiff's shoulder was a non-examining physician. (T 18, 234-41) Non-examining physicians' opinions are entitled to little weight when contrary to the opinion of examining physicians and alone do not constitute substantial evidence. Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). As such, the ALJ was under no obligation to give significant weight to the non-examining physician who found a limitation of frequent reaching.

The ALJ properly gave greater weight to the opinions of the examining physicians who did not find any limitations in reaching. Substantial evidence supports the ALJ's determination that Plaintiff's RFC did not include such a limitation. As Plaintiff's RFC was appropriately determined as not including a limitation on reaching, there was no error in not including this limitation in the hypothetical to the VE.

Plaintiff also claims that the ALJ improperly rejected the response of the VE that an inability to perform detailed or complex tasks due to problems with memory would preclude Plaintiff from returning to his former position as a lithographer (Dkt. 20 at 8). Plaintiff argues that it is unclear why this limitation was rejected by the ALJ, especially in light of reports from state agency psychologists which Plaintiff claims support the limitation. (Id. at 8-9) Plaintiff specifically cites the psychologists' notations that he exhibited moderate limitations in the ability to maintain attention, concentration, and pace; to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; and to respond appropriately to changes in the work setting. (Id.). (T 242-3, 266-7)

In determining a claimant's disability, an ALJ may pose several hypothetical questions presuming different restrictions on a claimant's ability to work. In rendering a decision, the ALJ

is not required to include findings in the hypothetical that the ALJ properly rejected as unsupported. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004).

In determining whether Plaintiff's memory problems warranted a limitation on the complexity of tasks, the ALJ addressed the state agency psychologists' assessments, noting that she gave them some weight in determining the limiting effects of Plaintiff's combined impairments in determining Plaintiff's RFC. (T 18) Arthur Hamlin, Psy.D. ("Dr. Hamlin") and James LeVasseur, Psy.D. ("Dr. LeVasseur") reviewed Plaintiff's mental health records on June 2004 and September 2004, respectively. (T 242-51, 252-69) The ALJ observed that the psychologists identified Plaintiff as having reduced concentration and adaptation and that he would be best in a low social demand work environment. (T 17, 244, 264, 268)

Dr. Hamlin's assessment indicates that Plaintiff had intact cognitive and memory functioning and was capable of recalling work-like procedures and instructions. (T 244) Dr. Hamlin reported reduced but not compromised attention and concentration. (Id.) Dr. Hamlin also mentioned that Plaintiff was capable of maintaining focus in completing "select SRT's."[6] (Id.) Dr. Hamlin made no mention of Plaintiff being limited only to simple tasks. (T 242-51) Dr. LeVasseur noted that Plaintiff was able to understand, remember, and carry out detailed instructions. (T 268) Dr. LeVasseur stated that Plaintiff was capable of simple tasks on a consistent basis but did not specifically limit Plaintiff to simple tasks. (T 268) Dr. LeVasseur identified one factor, Plaintiff's transient nature, as negatively impacting his ability to complete more complex tasks consistently. (Id.)

Contrary to Plaintiff's contention, neither of the psychologists' assessments specifically

---

[6]Both Plaintiff and Commissioner's briefs indicate that SRT is an abbreviation for simple repetitive task (Dkt. 20 at 8);(Dkt 21 at 9 n.4). (T 244)

showed that Plaintiff had memory problems of such a degree to warrant a limitation of only performing simple tasks.  Even so,  reviewing physicians' opinions  are entitled to little weight and other evidence on the record refutes the claim that Plaintiff is unable to perform complex tasks.  The ALJ evaluated the medical record of Plaintiff's examining psychologist Dr. Billie Jo Hatton ("Dr. Hatton") and noted that Dr. Hatton stated that Plaintiff had some difficulties in concentration, but could perform Serial 3's and "retain two of three words at fifteen minutes."  (T 17, 169-172) Dr. Hatton also mentioned that Plaintiff's "ability to return to the workforce [would] depend upon the nature of the task and his degree of contact with others."  (T 173) Dr. Hatton never indicated that Plaintiff was unable to perform complex tasks.

Additionally, at the hearing Plaintiff testified that he could concentrate and follow instructions to the extent of building models and did so on a daily basis. (T 18, 446)  The ALJ also identified that Plaintiff was able to complete puzzles. (T 18, 137)   Both of these activities are indicative of the ability to follow more than simple instructions and are mentioned by the ALJ as factors refuting Plaintiff's claims of being incapable of performing substantial gainful work. (T 18)

Plaintiff bore the burden of providing evidence in support of his claim of being restricted to performing only simple tasks as a result of his memory problems.  The evidence on the record does not support such a finding.  As such, the ALJ properly disregarded the VE's response to the hypothetical on a supposed inability to perform complex or detailed tasks.

**2.** Plaintiff argues that the ALJ failed to fully and adequately consider the requirements of Plaintiff's past work activities in determining whether Plaintiff's RFC allowed him to return to his past employment as a lithographer (Dkt. 20 at 6).

Plaintiff first contends that the Dictionary of Occupational Titles ("DOT") indicates that the

position of lithographer requires constant reaching and that Plaintiff has demonstrated a limitation of reaching (Dkt. 20 at 9). As discussed previously, this contention is without merit as the ALJ's omission of this limitation was supported by substantial evidence.

Plaintiff also asserts that the DOT requires that a lithographer perform a variety of duties, make judgments and decisions as well as possess certain GED levels. To the extent Plaintiff asserts that the demands of a lithographer conflict with Plaintiff's inability to perform detailed or complex tasks, as discussed earlier, this is without merit.

Plaintiff's argument also suggests that a conflict exists between the VE's testimony and the DOT (Dkt. 20 at 9-10). Other than the limitations suggested by Plaintiff which were rejected as not supported by substantial evidence, there does not appear to be any material conflict between the VE's opinion and the DOT listing requirements for a lithographer. Additionally, the ALJ asked the VE to discuss any conflicts between her testimony and the DOT. (T 449) The VE did not identify any conflicts and made reference to the DOT at various points throughout her testimony. (T 449-52) Plaintiff did not dispute the VE's qualifications when given an opportunity to do so at the hearing. (T 449) Furthermore, even if a conflict existed between the VE's testimony and the DOT, the Eleventh Circuit has held that in such situations "the VE's testimony 'trumps' the DOT" as "the DOT is not the sole source of admissible information concerning jobs." Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999), cert. denied, 529 U.S. 1089 (2000).

There is no evidence suggesting that the requirements of a lithographer were improperly considered by the ALJ in determining whether Plaintiff could return to that type of work. The hypothetical posed to the VE properly listed all limitations from Plaintiff's impairments and the VE's testimony was a proper basis of substantial evidence for the ALJ's determination that Plaintiff

was not disabled.

### III.

The ALJ's decision is supported by substantial evidence and the proper legal principles. Accordingly, the decision of the Commissioner is therefore **AFFIRMED**.

Accordingly and upon consideration, it is **ORDERED** that:

(1)     the decision of the Commissioner is **AFFIRMED** and the case **DISMISSED**, each party to bear its own costs and expenses; and

(2)     the Clerk of Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. § 405(g).

**DONE AND ORDERED** in Tampa, Florida this 27th day of September, 2007.

_____
ELIZABETH A JENKINS
United States Magistrate Judge